**In re Robert A. SPADE, Debtor.**

**ProFutures Special Equities Fund, L.P., et al., Appellants,**

v.

**Robert A. Spade, Appellee.**

**No. CIV.A. 00–K–1370.**
**Bankruptcy No. 00–11002 DEC.**

United States District Court,
D. Colorado.

Nov. 16, 2000.

Peter C. Houtsma, Holland & Hart, LLP, Denver, CO, for Robert A. Spade.

James T. Markus, Block, Markus and Williams, LLC, Denver, CO, for ProFutures Special Equity Fund, L.P.

Victor M. Morales, Clanahan, Tanner, Downing & Knowlton, P.C., Denver, CO, for Gary Schlessman, Lee E. Schlessman, Cal Rickel, and Amanda Rickel.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This is an appeal of the bankruptcy court's decision to dismiss, under the abstention provisions of 11 U.S.C. § 305(a), the involuntary bankruptcy petition of Debtor Slade. The petition was filed in February 2000 by Slade creditors ProFutures Special Equity Fund L/P., Gary Schlessman and Lee Schlessman and was later joined by creditors Cal and Amanda Rickel (collectively, the "Creditors"). At a prebriefing conference, Magistrate Judge Coan designated the appeal "EXPEDITED" in accordance with D.C.COLO.LR 40.1E and I set it for immediate oral argument. After considerable deliberation and consideration of the parties' written and oral arguments, applicable caselaw and the equitable and jurisprudential underpinnings of bankruptcy law generally, I REVERSE and REMAND this case for further proceedings.

### I. FACTS AND PROCEDURAL HISTORY.

The bankruptcy in question was the result of an 11 U.S.C. § 303 involuntary petition filed by the Creditors alleging both that they were owed various sums of money by Communications Systems International, Inc. (CSI) and that those sums were personally guaranteed by the debtor Spade. The ProFutures entities' claims total $2.8 million. The Rickels' unsecured claim totals $123,606.85.

At the time the ProFutures entities filed the involuntary petition, their claims were

the subject of a declaratory judgment action pending in El Paso County filed by Spade and involving the same debts and parties. The ProFutures Creditors filed the petition in lieu of filing an answer to Spade's state court complaint, which sought a determination that a transfer of assets Spade made to his wife in 1996 was not fraudulent.

In his Answer to the involuntary petition in bankruptcy, Spade denied the Creditors' allegations that any definable debts were owed, asserting the petitioning creditors had not met the prerequisites of 11 U.S.C. § 303 in initiating bankruptcy proceedings against him. Specifically, Spade asserted his alleged debts were contingent and the subject of a pending *bona fide* dispute and denied Creditors had any proof that he was failing to pay his debts as they became due as required before an involuntary petition may be commenced against a debtor like himself. In the alternative, Spade asked that the bankruptcy court abstain under § 305 on grounds that the pending state court action would resolve the dispute, and that Creditors had initiated the bankruptcy petition in lieu of filing an answer in the state court actions. The petitioning Creditors moved for summary judgment, which motion the bankruptcy court denied.

The matter came on for trial on June 15, 2000. In a detailed written decision filed June 26, 2000 (R. Supp. Vol. I, Tab 20), the bankruptcy court rejected Spade's contention that Creditors had failed to establish the prerequisites of § 303(b), finding instead that the Creditors had met their burden by showing Slade's debts to them had matured and had not been paid. The court rejected Slade's assertion that the claims were contingent as to liability, finding the pendency of the state court litigation insufficient by itself to establish under an objective test that Creditors' claims

were contingent or the subject of a *bona fide* dispute. *See* Order (R. Supp. Vol. I, Tab 20) at pp. 3–6. Relying on Judge Clark's decision in *In re Tarletz*, 27 B.R. 787, 793 (Bankr.D.Colo.1983), however, the court elected to abstain for exercising jurisdiction over the Creditors' petition under § 305 of the Code, noting Creditors had come forward with "no evidence" to show their claims could not be heard as expeditiously in state court and finding the state court "quite capable" of managing what was essentially a collection action against Spade such that "the interests of the debtor and the petitioning Creditors will be better served by [a] dismiss[al] [of the bankruptcy] case." (*Id.* at 7.) This appeal ensued.

## II. *LEGAL STANDARDS.*

■ On the issue of abstention, Section 305 of the Bankruptcy Code authorized bankruptcy court's to act as follows:

**Abstention**

(a) The court, after notice and a hearing may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . .

In accordance with the general rule that courts should exercise jurisdiction when properly invoked, and given Congress's declaration that abstention orders under § 305 are unreviewable beyond the federal trial court level,[1] I agree with others who have considered the issue that § 305 should be strictly construed. *E.g. In re RAI Marketing Serv., Inc.*, 20 B.R. 943, 945 (Bankr.D.Kan.1982).

While the legislative history neither defines nor limits the scope of § 305, it is illustrative.

---

1. Specifically, § 305(c) states that "[a]n order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of title 28 or by the Supreme Court of the United States under section 1254 of title 28."

A principle of common law requires a court with jurisdiction over a particular matter to take jurisdiction ... [t]his section recognizes that there are cases in which it would be appropriate for the court to decline jurisdiction.[2] Thus, the court is permitted, if the interests of creditors and the debtor would be better served by dismissal of the case or suspension of all proceedings in the case, to so order. The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the results of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out-of-court work-out may better serve the interests in the case ....

Notes of Committee on the Judiciary, S.R. No. 95–989. In this appeal, Creditors focus on the "[in] the interests of **creditors** and debtor" requirement in § 305(a), arguing abstention is not authorized as a matter of law under § 305 absent a specific finding that the interests of both debtor **and** creditors "would be better served" thereby. Creditors deny abstention in this case is in their interest, and argue the requirements of the abstention doctrine cannot therefore have been met. Alternatively, Creditors challenge the district court's findings questioning their motivation in filing the involuntary petition, arguing their motivation is either irrelevant to the question of abstention entirely or that it is but an aspect of the interests inquiry mandated by the statute. I agree in part with both assertions.

### III. *DISCUSSION.*

■ Cases construing § 305 are sparse. Courts like that in *In re RAI* take an extremely narrow view of § 305, sustaining § 305 motions only if "each and every factor" identified by the Senate Judiciary Committee exists. *In re RAI* at 946 (abstention warranted only when (1) petition is filed by "a few recalcitrant creditors and most creditors oppose bankruptcy," (2) "there is a state insolvency proceeding or other equitable and concrete out-of-court arrangement pending," and (3) dismissal/suspension "is in the best interest of the debtor and all creditors"). Other courts, including a division of our local bankruptcy court in *Tarletz*, take a broader view, sustaining a § 305 motion where the bankruptcy petition was essentially a two-party dispute between parties already engaged in litigation in state court and where the evidence presented showed the speed and efficiency creditors hoped to gain by proceeding in bankruptcy court was illusory, that creditors were not concerned the debtor was improperly transferring his assets, and that the bankruptcy proceedings were already impairing debtor's ability to run his business and pay his debts. *In re Tarletz*, 27 B.R. at 794–95. At either end of the spectrum, however, it is clear that specific findings, beyond a conclusory assertion that "the interests of the debtor and petitioning creditors will be better served," are required before a court may abdicate its duty to exercise jurisdiction over an otherwise proper case under § 305.

■ In my view, the bankruptcy court's Order in the instant case did not meet this standard. While it made a generalized conclusion that Spade would be prejudiced by the "social stigma" that attaches to debtors in bankruptcy, the court made no specific findings in the manner of *Tarletz* that this stigma had operated in any concrete manner in this case to impinge on Spade's ability to conduct his business or

---

**2.** I am not entirely comfortable with the Committee's invocation of common law because bankruptcy sounds in equity, and principles of common law do not apply to proceedings in equity. Such pedantry aside, however, the Committee's Notes merit consideration, particularly because they suggest Congress' intent that abstention benefit both creditors and the debtor in a given case.

to repay his debts to Creditors.[3] The court made no specific findings at all with respect to the motivations of Creditors in proceeding to bankruptcy rather than engage with Spade in a declaratory judgment action in state court. Would Creditors be entitled to greater protections or remedies in bankruptcy court than state court? Would a bankruptcy proceeding accomplish things for Creditors that they could not obtain in state court action? How close to trial and judgment is the state court action?

■ While it is clear that an "abuse of discretion" standard applies to decisions to dismiss or suspend under § 305(a), Creditors are correct in their assertion that an abuse of discretion standard applies only if the statutory requirements for the abstention doctrine being invoked have been met. *See Garamendi v. Allstate Ins. Co.,* 47 F.3d 350 (9th Cir.1995). Stated otherwise, a court's failure to make findings necessary to the proper exercise of its discretion is itself an abuse of discretion. *See de la Llana–Castellon v. INS,* 16 F.3d 1093, 1098 (10th Cir.1994). Where, as here, the authority to exercise that discretion is conferred and delimited exclusively by Congress and largely shielded by Congress from judicial review by Article III courts, a complete and proper exercise of the discretion conferred is paramount. The more power is possessed, the more reluctant must be the discretion to use it.

The Creditors urge me to revisit the "interests" and "motivation" questions *de novo,* arguing a proper allocation of the burden of proof[4] and a complete review of the record would preclude abstention under a proper exercise of § 305(a). I decline to do so. It is not within the purview of district courts under 28 U.S.C. § 157 to make independent factual findings for the bankruptcy court. If the bankruptcy court's findings are ambiguous or silent as to an outcome-determinative factual question (such as the existence of the factual prerequisites for abstention under § 305(a)) then the district court should remand the case to the bankruptcy court for consideration of such questions. *In re Goerg,* 930 F.2d 1563, 1566 (11th Cir.1991). Accordingly,

The bankruptcy court's conclusion that the interests of the "debtor *and* the petitioning creditors will be better served" by a dismissal under § 305 is REVERSED and the question REMANDED to the bankruptcy court for specific findings and conclusions explicating the court's exercise of discretion under § 305(a).

---

**3.** The "stigma" in this case, moreover, is paled by the fact that Spade had brought his company to the point of insolvency.

**4.** Here I agree with Creditors that, as the movant in a request for a dismissal under

§ 305, it was Slade, not they, who had the burden of proving abstention was in the interests of both the debtor and Creditors, not the other way around.